FILED

DEC 28 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN NAVA,<br><br>    Plaintiff,<br><br>v.<br><br>DERRAL ADAMS,<br><br>    Defendant. | No. C06-00392 MJJ<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Ruben Nava, a California prisoner, filed a Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Docket No. 1.) The Court ordered Respondent Warden Derral Adams to show cause why the Petition should not be granted. Respondent filed an Answer (Docket No. 6), and Petitioner then filed a Traverse.[1] (Docket No. 9.) For the following reasons, the Court **DENIES** the Petition in its entirety.

## PROCEDURAL BACKGROUND

Petitioner was convicted by a San Mateo County jury in 2002 of failing to register as a sex offender (Cal. Penal Code § 290(g)(2))[2] and of falsely identifying himself to a police officer (§ 148.9(a)). Subsequent to the jury verdict, the trial court found true three prior strike convictions

---

[1] Petitioner's Traverse was filed late. This Court, however, granted Petitioner's Motion for Relief from Default. (Docket No. 13.)

[2] All further statutory references are to the California Penal Code unless otherwise indicated.

pursuant to § 1170.12(c)(2), and that Petitioner suffered a prior conviction resulting in a prison term pursuant to § 667.5(b). In accordance with California sentencing provisions, the trial court sentenced Petitioner to twenty-six years in prison. (Resp't Ex. B. at 509-10.)

The California Court of Appeal ("COA") affirmed the verdict and sentence. The California Supreme Court denied a petition for review. Petitioner did not pursue habeas corpus relief in state courts.

## FACTUAL BACKGROUND

The following facts are taken from the opinion of the COA.[3]

### *Defendant Released on Parole*

Petitioner was convicted of a sex offense in 1992 that required him to register pursuant to Penal Code section 290. When Petitioner was released from prison in 1995, Petitioner was advised of his lifelong duty to register, and in fact Petitioner did register as a sex offender in Los Angeles County. Petitioner was released from prison again on January 1, 2001, and he signed an acknowledgment of the registration requirements. On January 2, 2001, he was orally advised by his parole officer that he needed to register. Petitioner had been placed in a "sober living home" in Long Beach, and his parole officer told him he needed to register with the Long Beach Police Department within five working days. The next day, January 3, 2001, Petitioner left the house in Long Beach and never again contacted his parole officer.

### *1001 Miramontes Point Road*

The Pelican Point RV Park at 1001 Miramontes Point Road in Half Moon Bay offers tent sites for camping and RV sites for motor homes. On March 19, 2001, Petitioner rented a tent site there, registering under the name Robert Garcia. Thereafter, he paid for additional nights: March 20, 22, 23, 24, 25;[4] March 28 through April 2; April 3 through 10, April 11; and April 12 through 25. Petitioner had a bicycle but no car.

In April, Petitioner began a relationship with Deborah Hock, who owned a motor home that

---

[3]The COA Opinion was provided by both parties, attached as Petitioner's Exhibit B and also as Respondent's Appendix A, Exhibit F.

[4]For the night of March 26, the rent for the tent site was paid by someone else on Petitioner's behalf.

2

occupied space 61 at the Pelican Point RV Park. Ms. Hock paid the rent for Petitioner's tent site for April 26 to May 3 and May 4 to 12. Petitioner began staying some nights with Ms. Hock in her motor home. On May 4, Ms. Hock informed the management at Pelican Point RV Park that Petitioner would be moving into her motor home. After May 12, no further rent was paid for the tent site. The registration records for Ms. Hock's RV site showed two persons occupying her RV site.

On one occasion, Petitioner ordered some tattoo equipment over the internet and had it mailed to him at the address for the Pelican Point RV Park. Petitioner kept that equipment along with his bicycle, sketch books, and clothes at Ms. Hock's RV site.

In those spring months of 2001, Petitioner worked intermittently on plumbing and painting jobs at a restaurant in Half Moon Bay that was being renovated. The restaurant owner paid Petitioner with food and art supplies as well as cash. Petitioner sometimes failed to show up for work, and the owner went to Pelican Point RV Park to look for him, though he never found him there.

*250 San Mateo Drive*

When Ms. Hock first moved into the Pelican Point RV Park, she was waiting for escrow to close on her purchase of a mobile home. In late June 2001, Ms. Hock took possession of that mobile home, which was located at Hilltop Mobile Home Park, 250 San Mateo Drive in Half Moon Bay, about two miles from the Pelican Point RV Park. She began cleaning out the new residence and packing up and moving her belongings, as well as Petitioner's, from the motor home into the mobile home. She last paid rent on the RV site at Pelican Point RV Park on June 19.

*Domestic Violence Arrest*

In the early morning hours of July 5, 2001, two police officers from the Half Moon Bay police department responded to a domestic violence call from Ms. Hock at her mobile home on San Mateo Drive. Petitioner was inside the mobile home when the police arrived. He gave his name as Robert Garcia and said he and Ms. Hock had been living together about four months and that his belongings were in the mobile home.[5] He also said he and Ms. Hock had purchased the mobile home

---

[5] It was stipulated at trial that Petitioner's true name is Ruben Nava. Petitioner did not dispute his commission of the offense charged in count 2-giving a false name to a police officer upon arrest.

3

together for $80,000.

Ms. Hock was visibly intoxicated and complained that Petitioner had ripped her dress, thrown her against the wall, and slapped her. The officers noticed that Ms. Hock's dress was in disarray but not ripped and that Ms. Hock had no signs of injury. Ms. Hock told the police once at the scene and again the following day that she and Petitioner had been living together about three or four months and had been in the mobile home for about two weeks.

Petitioner was taken into custody on the domestic violence complaint and interviewed by an investigator for the district attorney's office. Petitioner told the investigator that he was "running from parole" and had been in Half Moon Bay for three and a half months. Petitioner admitted to the investigator that he had been told of the sex registration requirements by his parole officer. He said he had intended to register in Long Beach but was unhappy in the home there and left.

A search of the records of the Half Moon Bay Police Department showed that Petitioner had never registered as a sex offender there.

## DISCUSSION

### A. Standard of Review

A federal court may grant a writ of habeas corpus to a state prisoner only if the state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts. 28 U.S.C. § 2254(d). A state court's decision is contrary to federal law if it "failed to apply the correct controlling authority from the Supreme Court." *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2001) (quoting *Shakleford v. Hubbard*, 234 F.3d 1072, 1077 (9th Cir. 2000)); *see also Williams v. Taylor*, 529 U.S. 362, 405–07 (2000); *LaJoie v. Thompson*, 217 F.3d 663, 667–68 (9th Cir. 2000). A state court decision is an "unreasonable application" of Supreme Court law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. In order to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Id.* at 409. A ruling which is "debatable" is not clear error. *See McDowell v. Calderon*, 197 F.3d 1253, 1256 (9th

4

Cir. 1999).

Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error justifies overturning the conviction only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *Shackleford*, 234 F.3d at 1079 (also quoting *Brecht*). The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error review conducted by the state courts. *Karis v. Calderon*, 283 F.3d 1117, 1128 n. 4 (9th Cir. 2002); *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000).

### B. Legal Claims

Petitioner asserts six claims as grounds for habeas relief.[6] First, Petitioner claims that he was denied due process because the jury could have returned a guilty verdict based on a jury instruction's utilization of the unconstitutionally vague term "location." Second, Petitioner claims he was denied due process because if the term "location" was not unconstitutionally vague as used in the jury instruction, then the trial court had a *sua sponte* duty to define "location." Third, Petitioner claims he was denied due process because the trial court erroneously instructed the jury regarding the required finding of intent. Fourth, Petitioner claims he was denied due process because sufficient evidence did not exist to support a guilty verdict, and also because the jury could find him guilty without finding a statutory requirement. Fifth, Petitioner claims his due process rights were violated when the trial court failed to properly instruct the jury on the knowledge they needed to find Petitioner possessed to support a conviction. Sixth, Petitioner claims his sentence of twenty-six years constitutes a grossly disproportionate sentence and is therefore a cruel and unusual punishment in conflict with the Eighth Amendment.

#### 1. Claims One and Two: Challenges Based on Vagueness of Term "Location."

Petitioner's first claim asserts that the COA unreasonably applied federal law by failing to find that the term "location" was unconstitutionally vague as incorporated into the jury instructions at

---

[6] Petitioner fails to frame his claims pursuant to the requirements of section 2254. Respondent, however, addresses each claim as though it alleges an unreasonable application of clearly established federal law. The Court will analyze each claim as though it was properly incorporated into the section 2254 framework.

5

Petitioner's trial. Alternatively, Petitioner argues in his second claim that the COA unreasonably applied federal law by failing to find that if the term "location" was not unconstitutionally vague as used during Petitioner's trial, the term had a unique legal meaning, and therefore, Petitioner was entitled to an instruction defining "location."

### a. Petitioner's First Claim: Petitioner's Due Process Rights Were Violated as a Result of the Trial Court's Use of the Unconstitutionally Vague Term "Location."

Petitioner argues that the COA unreasonably applied clearly established federal law by failing to find that use of the unconstitutionally vague term "location" resulted in a denial of his due process rights. Petitioner asserts that the jury was permitted to convict him by finding that he had a duty to register because he had a location, even if the jury did not necessarily find that Petitioner had a residence at which he was required to register as a sex offender. In addition, Petitioner argues that the prosecutor's argument, which included use of the vague term "location," would have supported the jury in convicting Petitioner if they only found he had a location, but not a residence. Petitioner supports his argument that the COA unreasonably applied clearly established federal law by noting that the term "location" has been eliminated from the text of section 290 as a result of a California Court of Appeal decision recognizing the term's unconstitutional vagueness. *See People v. North*, 112 Cal. App. 4th 621 (2003).

Respondent acknowledges that the term "location" as used in section 290 is vague in some contexts. Respondent argues, however, that the COA did not unreasonably apply clearly established federal law because the jury was not permitted to convict Petitioner based on an ambiguous instruction. This is supported by the COA finding that the jury convicted Petitioner based on Petitioner establishing a residence, and not based on a vague concept of "location." Respondent directs the Court to the COA's finding that the word "location" was only used to elaborate what constitutes a residence, and to explain that the definition of residence is not limited to a traditional home. Respondent's position is that therefore, because the COA found that Petitioner was not convicted based on the jury's use of a vague term, and could only have been convicted based on the use of the definite term "residence," the COA did not unreasonably apply federal law.

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or

6

would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991); *Boyde v. California*, 494 U.S. 370, 380 (1990); *Ficklin v. Hatcher*, 177 F.3d 1147, 1150-51 (9th Cir. 1999) (harmless error when certain that jury did not rely on constitutionally infirm instruction). A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution, however, establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht*, 507 U.S. at 637, before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47; *Sarausad v. Porter*, 479 F.3d 671, 679 (9th Cir. 2007).

The COA acknowledged the potential vagueness in "location" as used in section 290, but found that in the context of Petitioner's trial, ambiguity did not exist. The COA concluded their analysis as follows:

> As we read the prosecutor's argument in the context of the evidence and theories presented by both sides, the prosecutor used the term "location" simply to expand the definition of "residence" beyond a structure with four walls and to argue that the duty to register applies even when the offender is living in a tent. Indeed, defense counsel had previously explained to the jury that location means residence. Contrary to [Petitioner's] arguments on appeal, we see nothing either in the instructions or in the closing arguments to suggest that the jury might have been led to convict [Petitioner] based simply on his being present in Half Moon Bay though not residing there.

(COA Op. at 8-9.)

The COA found no likelihood that the jury used the term "location" in a way which would violate the Constitution. The COA observed that the term "location" was used at Petitioner's trial to better explain, and also to simply mean, the same thing as the term "residence." (*Id.*) Hence, the COA found that use of the word "location" did not amount to an ambiguous instruction being given to the jury.

The COA distinguished its finding in *North*, in which "location" in the section 290 context was found unconstitutionally vague. 112 Cal. App. 4th 621, 634. The distinction between "location" in *North* and in this case is that in *North*, the defendant was transient; *North* involved a defendant who without question did not have a residence. In Petitioner's case, however, the trial court

7

instructed the jury in recognition that the portions of section 290 applicable to homeless offenders did not apply. (Resp't Ex. B at 381.) The argument in the present case was specifically about Petitioner's possible residences, not his location as a transient. (Resp't Ex. B at 370, 403-04, 411; COA Op. at 6-8.)

This Court is not persuaded that the COA was unreasonable in finding that the actual use of the word "location" did not detract from the jury's duty to find that Petitioner had a residence at which he was required to register if they were going to find him guilty pursuant to section 290. The COA found "nothing either in the instructions or in the closing arguments to suggest that the jury might have been led to convict [Petitioner] based simply on his being present in Half Moon Bay though not residing there." (COA Op. at 10.) The Court has reviewed the record and agrees with the COA's finding that the jury was not given an erroneous, unconstitutionally vague, instruction as argued in Petitioner's first claim. The jury was specifically instructed with a definition for "residence," and also that to convict Petitioner, they had to find that he resided in San Mateo County. (Resp't Ex. B at 403-04.) Moreover, the prosecutor's arguments pertained to specific places where the jury could have found that Petitioner resided. (Resp't Ex. B at 411-18; COA Op. at 8.) Based on the instructions and arguments, this Court agrees with the COA that "the jury would have found the prosecution's case not proven if it found [Petitioner] did not have a residence in San Mateo County." (COA Op. at 8.) Accordingly, the Court finds that the COA did not unreasonably apply clearly established federal law as challenged in Petitioner's first claim. The Court, therefore, will not grant Petitioner relief pursuant to the first claim.

b. **Petitioner's Second Claim: If the Term "Location" is Not Unconstitutionally Vague, the Trial Court Failed in its Duty to Define the Term "Location."**

Petitioner argues that if the term "location" was not unconstitutionally vague, the trial court had a duty, and failed in its duty, to define the term "location" because "location" did not possess its ordinary meaning in the context of Petitioner's case. *See People v. Roberge*, 29 Cal. 4th 979, 988 (2003) ("[A] trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case."). Petitioner's position is that the COA's failure to find that the trial court had a duty to provide an instruction defining "location" resulted in an unreasonable application of the

8

principle that a due process right is denied when a trial court fails to instruct the jury regarding all elements of the charged crime. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000); *U.S. v. Gaudin*, 515 U.S. 506, 511 (1995).

Respondent contends that the COA reasonably determined that "location" did not possess a meaning which warranted an instruction defining it because of the term's limited role at Petitioner's trial. Respondent focuses on the COA finding that the jury convicted Petitioner based on his having a residence, not based on Petitioner having a location.

Whether a term in a jury instruction requires definition depends on whether the term expresses a concept within jury's ordinary experience. *United States v. Tirouda*, 394 F.3d 683, 689 (9th Cir. 2005) (no error resulting from failure to define "accomplice" in an accomplice instruction).[7] The starting point, therefore, in the inquiry into whether the COA unreasonably applied federal law by failing to find necessary a jury instruction defining "location," is to determine whether the COA was unreasonable in its view of how the term "location" was used at Petitioner's trial.

This Court finds that the COA did not unreasonably apply federal law when it found that the trial court did not have a duty to define the term "location." In a footnote immediately following the COA's analysis of Petitioner's first claim, the COA explained that as a result of its analysis of whether the term "location" was unconstitutionally vague, it was satisfied that the term "location" did not require any further definition by the trial court. (COA Op. at 10.) During the COA's inquiry into whether "location" was unconstitutionally vague, the COA found that "location" as used in Petitioner's case was used to further define "residence." (*Id.* at 9-10.) This Court agrees that the word "location" was used to convey that a residence was not limited to traditional notions of what constitutes a residence. Further, Petitioner's trial counsel gave definition to "location" by explaining that "location" is synonymous with "residence." (Resp't. Ex. B at 370, 427, 445.)

Given how the term "location" was used during Petitioner's trial, the COA reasonably concluded that "location" did not necessitate a defining instruction. Because of the instructions that defined residence and required the jury to find that Petitioner had a residence, and because of the

---

[7] The Court does not in this section of this Order cite the standards for an omitted instruction because the Court finds that it was reasonable for the COA not to proceed past the threshold inquiry of whether the term "location" necessitated a defining instruction. Applicable standards for omitted instructions, however, follow in section (B)(2) of this Order.

9

arguments defining "location" as synonymous with "residence," "location" had limited relevance as a separate concept at Petitioner's trial. The Court finds that no reasonable juror could misunderstand what that term meant in the context of Petitioner's trial. The term "location" did not have a special meaning under the law for which instruction by the trial court was necessary. Accordingly, the Court finds that the COA did not unreasonably apply clearly established federal law by finding that an instruction defining "location" was not necessary for the jury to be properly instructed on all elements of the charged offense. The Court declines to grant relief pursuant to Petitioner's second claim.

### 2. Claims Three, Four, and Five: Claims of Erroneous Jury Instructions.

Petitioner's third, fourth, and fifth claims are understood by the Court to include four distinct arguments that the COA unreasonably applied federal law with regard to asserted error in the jury instructions.

A jury instruction that omits an element of an offense is constitutional error subject to "harmless error" analysis. *See Neder v. United States*, 527 U.S. 1, 8-11 (1999) (direct review); *Evanchyk v. Stewart*, 340 F.3d 933, 940 (9th Cir. 2003) (§ 2254 case); *Spicer v. Gregoire*, 194 F.3d 1006, 1008 (9th Cir. 1999) (§ 2254 case). Harmless error applies whether the error is characterized as a misdescription of an element of an offense in a jury instruction, or as an omission of the element. *See California v. Roy*, 519 U.S. 2, 5 (1996) (omission of "intent" element from aiding and abetting instruction subject to harmless error analysis where jury could have found intent based on evidence it considered); *United States v. Lin*, 139 F.3d 1303, 1309 (9th Cir. 1998) (omission of intent element from charge of making ransom demands harmless error analysis). The omission will be found harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Roy*, 519 U.S. at 4 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *see Roy v. Gomez*, 108 F.3d 242, 242 (9th Cir. 1997) (on remand after *California v. Roy*).

Where the trial court simply fails to alert the jurors that they must consider an element of the crime, the omission is harmless if review of the facts found by the jury establishes beyond a reasonable doubt that the jury necessarily found the omitted element. *See Neder*, 527 U.S. at 15-20 (error harmless because "the omitted element was uncontested and supported by overwhelming

10

evidence"); *Lin*, 139 F.3d at 1309 (error harmless if no rational jury would have made the findings without also finding missing element of the crime). But if the reviewing federal habeas court is in grave doubt as to whether the error had substantial and injurious effect or influence in determining the jury's verdict, the petitioner is entitled to the writ. *See Evanchyk*, 340 F.3d at 940-42.

      **a.** **Petitioner's Third Claim: The Trial Court Failed in its Duty to Instruct on All Elements of an Offense by Failing to Instruct on the Willfulness of Petitioner's Failure to Register.**

Petitioner's third claim is made pursuant to same federal law cited in Petitioner's second claim which recognizes that a criminal defendant is denied due process if convicted by a jury that has not been instructed as to all elements of the alleged offense. *See Apprendi*, 530 U.S. at 477; *Gaudin*, 515 U.S. at 511. Petitioner argues that crimes charged pursuant to section 290 are specific intent crimes, which require willful violations of the law's requirements. *See* section 290(g)(2). Petitioner asserts that he was therefore entitled to have the jury instructed as to the willfulness of an element of the crime for which the jury was not so instructed. Specifically, Petitioner's position is that because the jury was only instructed that they had to find that Petitioner willfully failed to inform in writing, but not specifically that Petitioner willfully failed to register, that the jury therefore could have found Petitioner guilty of failing to register without finding that failure to be willful.[8] Petitioner contends that the COA, which concluded that registration and informing in writing are synonymous acts in the context of section 290, unreasonably applied clearly established federal law in finding that the instructional error was harmless beyond a reasonable doubt.

Respondent argues that the COA was not unreasonable in its application of federal law when it found that the error resulting from the trial court's instruction was harmless beyond a reasonable doubt. Respondent urges the Court to agree with the COA's finding that the instruction given necessarily would require the jury to find that Petitioner had the requisite mental state when he failed to register as a sex offender.

The COA observed that in accordance with their decision in *People v. LeCorno*, 109 Cal. App. 4th 1058 (2003), it was evident that the jury instructions Petitioner's third claim arises out of included a misstatement of the charged offense's elements. (COA Op. at 6.) However, also in

---

[8]The instructions read to the jury pertaining to the section 290 charge are located in Resp't Ex. B at 403-05.

11

accord with *LeCorno*, the COA found any error to be harmless beyond a reasonable doubt. The COA found the error harmless because it was evident that Petitioner neither informed in writing, nor registered with, the San Mateo Police Department. Further, if Petitioner had registered, the act of registering necessarily would have included informing the authorities in writing of his new residence. By the COA's reasoning, when the jury found that Petitioner had willfully failed to inform the authorities of his new residence in writing, the jury necessarily found that Petitioner willfully failed to register because informing in writing is a necessary component of registration. (*See* COA Op. at 5-6.); *LeCorno*, 109 Cal. App. 4th at 1066-67; *see also People v. Vigil*, 94 Cal. App. 4th 485, 507-09 (2001).

This Court finds nothing in the record to contradict the COA's reasoning. Although the instructions were erroneous in that they encompassed different language than stated in the charged crime, the Court is not persuaded that a person could register pursuant to section 290 without informing the appropriate authority in writing. The Court finds that because the jury was instructed that they had to find that Petitioner willfully failed to comply with a necessary component of registration, the jury therefore found that Petitioner possessed the necessary intent to support a conviction. Accordingly, the Court agrees that the contested instructional error was harmless beyond a reasonable doubt. The Court declines to grant relief pursuant to Petitioner's third claim.

**b.  Petitioner's Fourth Claim, Part One: The Guilty Verdict, if Based on a Violation of Section 290(f)(1), Was Not Supported by Sufficient Evidence.**

The Court reads Petitioner's fourth claim as consisting of two distinct claims. The Court will address the two aspects of Petitioner's fourth claim separately.

The first part of Petitioner's fourth claim contends that the COA unreasonably applied federal law by not addressing whether there was sufficient evidence to support a conviction pursuant to section 290(f)(1). A conviction based on insufficient evidence in support of each element of the offense violates an accused's due process rights. *In re Winship*, 397 U.S. 358, 364 (1970); *Jackson v. Virginia* 443 U.S. 307, 319 (1979). The jury instructions given required the jury to find that Petitioner failed to "inform in writing" the appropriate authority in San Mateo County. Petitioner observes that the language "inform in writing" is language from subdivision (f)(1) of section 290,

12

and argues that there was not sufficient evidence to support other elements of that subdivision of section 290.

Petitioner acknowledges, however, that the COA found that he was actually convicted pursuant to section 290(a)(1)(A). Section 290(a)(1)(A) criminalizes failure to register with the applicable authorities when a person required to register as a sex offender establishes a new residence. Section 290(f)(1) criminalizes failure to inform in writing the applicable authorities at a prior residence when a person required to register as a sex offender moves away from a jurisdiction. Section 290(a)(1)(A) does not specifically require informing in writing, only to register. As discussed earlier, the act of registering as a sex offender necessarily incorporates informing an agency in writing. Regardless, Petitioner argues that if he could have been convicted of the criminal offense in section 290(f)(1), then there was not sufficient evidence to support that conviction, and his due process rights were therefore violated.

Respondent argues that the COA did not unreasonably apply clearly established federal law in finding that they did not need to address whether sufficient evidence would support a conviction under section 290(f)(1) because Petitioner was not convicted under that subdivision of section 290. Respondent observes that the COA found that Petitioner was convicted under section 290(a)(1)(A), and that although there was instructional error pursuant to that subdivision, the error was harmless beyond a reasonable doubt.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. at 364. A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson*, 443 U.S. at 321, which, if proven, entitles him to federal habeas relief, *see id.* at 324; *Wigglesworth v. Oregon*, 49 F.3d 578, 582 (9th Cir. 1995) (writ granted where Oregon procedure of allowing lab reports regarding drug analyses to be admitted into evidence without authenticating testimony relieved state of its burden to prove beyond reasonable doubt all elements of crime charged); *Martineau v. Angelone*, 25 F.3d 734, 739-43 (9th Cir. 1994) (writ granted where evidence found insufficient to

13

convict defendants of child abuse based on delay in seeking medical care for child).

This Court finds that the COA was not unreasonable in finding that Petitioner was convicted pursuant to section 290(a)(1)(A), albeit with harmless instructional error attributable to the incorporation of language from section 290(f)(1). The Court finds Petitioner's argument that the jury could have convicted Petitioner pursuant to section 290(f)(1) to be unavailing. The only theory put to the jury with regard to Petitioner's failure to register was with regard to registering a new residence, or change of residence, in San Mateo County. (Resp't Ex. B at 403-04, 411-18.) This finding is not altered by the fact that the words "inform in writing," which is language borrowed from section 290(f)(1), was used in the instruction provided, instead of the language "register," as is in section 290(a)(1)(A). The evidence presented, the arguments of counsel, and the instructions read to the jury all directly pertained to the crime charged in section 290(a)(1)(A). Petitioner fails to demonstrate that the jury did, or could have, convicted him of failing to notify the authorities where he formerly resided as required by section 290(f)(1). Accordingly, the Court declines to grant Petitioner relief based on the first challenge in the fourth claim.

    **c. Petitioner's Fourth Claim, Part Two: The Jury Instruction Used Failed to Properly Instruct on the Required Length of Time Necessary to Establish a Residence.**

Petitioner's second portion of the fourth claim contains an argument that although the jury was instructed that they had to find that Petitioner "willfully failed to inform in writing the law enforcement agency in the city in which he resided within five working days of his change of residence or his additional residence within five working days," the jury was able to convict Petitioner without finding that he resided at a residence in San Mateo County for the five days required by the statute. Petitioner argues that the jury was able to convict Petitioner if they found he merely changed where he was staying and failed to register, even if the jury did not find that Petitioner resided at either of those places for the statutory length of time which is necessary to trigger the duty to register as a sex offender. Petitioner's argument is understood by this Court to be that the COA unreasonably applied clearly established federal law by failing to find the jury instructions erroneous to the extent the instructions allowed the jury to find that Petitioner was in violation of section 290(a)(1)(A), regardless of whether the jury found Petitioner had triggered the

14

requirement to register as a sex offender.

Respondent replies by arguing that the instructions provided required that to convict Petitioner, the jury must find that Petitioner resided in San Mateo County for the statutory period of five working days, and therefore triggered the duty to register. Hence, Petitioner could not have been convicted without the jury making such a finding.

The jury could not have convicted Petitioner without finding that he triggered the duty to register as a result of residing at a residence in San Mateo County for five days. The language of the instructions required that to convict Petitioner, the jury had to find that Petitioner resided in San Mateo County at a residence, and that he resided at that residence for five days. (Resp't Ex. B at 403-04.) This requirement would apply even if the jury convicted Petitioner of failing to register after changing residences within San Mateo County; the jury would have had to find that Petitioner resided at the new residence for five days because of the instructions' clear language. Accordingly, the Court agrees with the COA that this aspect of the challenged instructions was not erroneous. The Court declines to grant Petitioner relief pursuant to the second aspect of the fourth claim.[9]

### d. Petitioner's Fifth Claim: The Trial Court Wrongly Instructed on Petitioner's Requisite Knowledge.

Petitioner's fifth claim is that the jury could have convicted him without finding that he had the requisite knowledge required for an unlawful omission to act. The contested omission is Petitioner's failure to register as a sex offender as is required upon establishing residency in a county for five days. Petitioner argues that he was entitled to an additional instruction pertaining specifically to the knowledge requirement now asserted, and that the omission of such an instruction amounted to a violation of Petitioner's due process rights. *See Apprendi*, 530 U.S. at 477; *Gaudin*, 515 U.S. at 511. The requisite knowledge Petitioner argues that the jury was not adequately instructed on is actual knowledge that the requirement to register had been triggered. Petitioner argues that although it was beyond dispute that he knew he had a duty to register as a sex offender if he had a residence, it was not beyond dispute that Petitioner actually knew he had established

---

[9]To the extent Petitioner discusses continuous presence in the fourth claim, the Court finds that this issue cannot sound a constitutional claim. The COA addressed what constitutes the five day statutory period under state law, and found that continuous presence is not required. (See COA Op. at 11-12.) This Court must defer to the state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998).

15

residency and thus triggered the duty to register. Petitioner asserts that the jury had to find that Petitioner had actual knowledge that he had triggered the duty to register, *see People v. Garcia*, 25 Cal. 4th 744, 752-54 (2001), and that therefore, the trial court should have instructed the jury that they had to find that Petitioner had actual knowledge that he was required to register because of his living circumstances in San Mateo County.

The COA found that Petitioner incorrectly interpreted *Garcia* as that case relates to the present claim. (COA Op. at 13.) The COA clarified that *Garcia* "simply held that the defendant must have actual knowledge of the duty to register." (COA Op. at 13.) "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. Bound by the COA's interpretation of the knowledge the jury had to find Petitioner possessed to support a conviction, the Court turns to the instruction provided. The Court agrees with the COA's finding that "the jury was correctly instructed that [Petitioner] must have had 'actual knowledge' of his duty to register." (Resp't Ex. B at 404; COA Op. at 12-13.) Under the COA's interpretation of *Garcia*, further instruction requiring the jury to find that Petitioner had actual knowledge that he had triggered the duty to register was not necessary. The Court will not grant Petitioner relief pursuant to the fifth claim.

### 3. Petitioner's Sixth Claim: Challenges to Sentence.

Petitioner's sixth and final claim is that the sentence imposed, a sentence of twenty-six years, constitutes a grossly disproportionate sentence in violation of the Eighth Amendment's ban on cruel and unusual punishment. *See Solem v. Helm*, 463 U.S. 277 (1983). Petitioner frames his latest offense as a regulatory and a reporting offense, and as such, minor. *See People v. Castellanos*, 21 Cal. 4th 785, 796 (1999) (citing *Wright v. Superior Court*, 15 Cal. 4th 521, 527 (1997)); *U.S. v. Bajakajian*, 524 U.S. 321, 337-39 (1998); *Lambert v. California*, 355 U.S. 225, 229 (1957). Petitioner argues that the penalty imposed was harsh when compared to the gravity of Petitioner's most recent conviction. Petitioner's argument is that the COA unreasonably applied federal law in its finding that Petitioner did not satisfy the threshold prong of the three prong analysis for a disproportionality challenge as explained in *Solem*, 463 U.S. at 292.

16

Respondent argues that the COA did not unreasonably apply clearly established Eighth Amendment precedent in deciding that Petitioner's sentence of twenty-six years did not constitute a disproportionate sentence. *See Lockyer v. Andrade*, 538 U.S. 63, 72-76 (2003). Respondent also disputes Petitioner's contention that his latest offense was merely a minor reporting offense, and argues that the way in which Petitioner re-offended demonstrates the continuing danger Petitioner posed.

The conviction underlying Petitioner's sixth claim is a felony conviction for failing to register as a sex offender as required by section 290(g)(2). Subsequent to that conviction, Petitioner was sentenced in accord with California's Three Strikes laws to a prison term of twenty-six years. (COA Op. at 14.) Prior to finding that Petitioner's sentence did not violate the Eighth Amendment, the COA began its inquiry based on the clearly established federal law that "[i]n proscribing cruel and unusual punishment, the Eighth Amendment to the United States Constitution prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." (COA Op. at 14) (citing *Weems v. United States*, 217 U.S. 349, 378-79 (1910); *Ewing v. California*, 538 U.S. 11, 20 (2003)).

California's Three Strikes law, which appears in California Penal Code section 667(b)-(i), was enacted by the Legislature and became effective March 7, 1994.[10] The heart of the Three Strikes law is subdivision (e) of section 667, which prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies. *See* § 667(d).

Subdivision (e) may be summarized as follows: A second strike defendant (with one prior felony conviction) receives "twice the term otherwise provided as punishment for the current felony conviction." Section 667(e)(1). A third strike defendant (with two or more prior felony convictions) receives an indeterminate term of life imprisonment, which includes a minimum term. The

---

[10] In addition to the California Legislature's version of the Three Strikes Law found at California Penal Code § 667, there is an initiative version of the Three Strikes Law found at California Penal Code § 1170.12. The initiative version of the Three Strikes Law was passed by the voters several months after the Legislature's version, and the California Supreme Court has not determined whether the latter supersedes the former. *See People v. Superior Court (Romero)*, 13 Cal. 4th 497, 504-06 (1996). Although the two versions differ in minor respects, the initiative's history demonstrates the unequivocal intent of the voters to adopt a sentencing scheme identical to the legislative version of the Three Strikes Law. *See People v. Hazelton*, 14 Cal. 4th 101, 106-07 (1996) (using initiative's history to determine that the initiative version, like the legislative version, of the Three Strikes Law counts out-of-state prior convictions as strikes).

17

minimum term for a third strike defendant is the greatest of (1) "[t]hree times the term otherwise provided as punishment for each current felony conviction," (2) 25 years, or (3) the term determined by the court, including enhancements, under Penal Code section 1170 et seq. § 667(e)(2). These provisions, for both second and third strike defendants, apply "in addition to any other enhancement or punishment provisions which may apply . . . ." § 667(e).

The COA considered whether Petitioner's sentence of twenty-six years constitutes a grossly disproportionate punishment. This Court observes that the COA properly inquired as to whether Petitioner's sentence is grossly disproportionate under the applicable three part test. (COA Op. at 14.) (citing *Solem*, 463 U.S. at 292). Petitioner now argues that the COA's analysis under the first prong of this test was an unreasonable application of federal law. The first prong of the *Solem* test, which is used to determine whether a case demonstrates an inference of gross disproportionality, requires a court to assess "the gravity of the offense and the harshness of the penalty." *Solem*, 463 U.S. at 292. The COA recognized that the second and third prongs of the *Solem* test only need to be applied "when an inference of gross disproportionality is raised by an assessment of the crime committed and the penalty imposed." (COA Op. at 14-15.); *see, e.g., Ewing*, 538 U.S. at 30-31. The United States Supreme Court has observed that its own decisions evidence a "lack of clarity regarding what factors may indicate gross disproportionality." *Andrade*, 538 U.S. at 72.

The COA relied on the plurality opinion in *Ewing*, 538 U.S. 11, in analyzing the proportionality of Petitioner's sentence. In *Ewing*, a sentence of twenty-five years to life in prison pursuant to California's Three Strikes law was upheld despite proportionality challenges. The proper framing of Ewing's latest conviction was "felony grand theft for stealing nearly $1,200 worth of merchandise after previously having been convicted of at least two 'violent' or 'serious' felonies;" not as shoplifting three golf clubs. *Ewing*, 538 U.S. at 28. Ewing's "criminal history spanned nearly 16 years and had become increasingly violent, including convictions for multiple thefts and burglaries, felony grand theft auto, battery, possession of drug paraphernalia, appropriating lost property, unlawful possession of a firearm, and trespassing." 538 U.S. at 18-20. The COA, in its analysis of *Ewing*, found that Ewing's "long history of recidivism obviously tipped the balance against a finding of gross disproportionality." (COA Op. at 15.) The Court cannot deem this

18

interpretation of federal law unreasonable given *Ewing*'s recognition that "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony but also his long history of felony recidivism." 538 U.S. at 29.

There is no doubt that Petitioner has a "long history of criminal conduct and violence." (COA Op. at 16.) That history began in 1981 with a conviction for attempted grand theft with the use of a knife. (Resp't Ex. B at 506.) Subsequently, Petitioner was convicted for assault with a deadly weapon, drug possession, a second conviction for assault with a deadly weapon, molesting a four-year-old child after making her drink beer, and possessing stolen property. (*Id.* at 506-07.) Based on the COA's framing of Petitioner's offense as a deliberate, evasive choice which allowed him to keep out of the reach of authorities for many months, combined with Petitioner's criminal history, the COA found that no inference of gross disproportionality existed in Petitioner's case. The characterization of Petitioner's latest offense in consideration of his prior offenses was a reasonable application of federal law in light of *Ewing*. The Court therefore finds that the COA did not unreasonably apply clearly established federal law in finding that "[i]n light of [Petitioner's] serious criminal history going back over 20 years, [Petitioner's] sentence of 25 years to life does not raise an inference of gross disproportionality." (COA Op. at 16.) Accordingly, the Court declines to grant Petitioner relief with regard to the sixth claim.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Petition in its entirety.

**IT IS SO ORDERED.**

Dated: December 26, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

19